UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| IN RE EVETTE NICOLE REED, | ) |
| | ) Case No.: 4:16cv633 RLW |
| Debtor, | ) |
| | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the appeals of Ross H. Briggs and Critique Services, LLC of the Bankruptcy Court's decision.[1]

## BACKGROUND

This is a consolidated appeal of an order and separate judgment issued on April 20, 2016 by the Bankruptcy Court in eight Chapter 7 bankruptcy cases (the "April 20, 2016 Order"). In the April 20, 2016 Order, the Bankruptcy Court issued sanctions against attorney James Robinson ("Robinson") (who is not a party to this appeal) appellant Ross H. Briggs ("Briggs"), and Appellant Critique Services, LLC ("Critique").

In June 2014, the Bankruptcy Court, Judge Charles E. Rendlen, III, suspended Attorney James Robinson from the Bankruptcy Court. *See In re Latoya Steward*, 2016 WL 3629028 (8th Cir. Jul. 7, 2016). Thereafter, Briggs volunteered to provide representation to approximately ninety-five (95) of Attorney Robinson's clients who had filed Chapter 7 bankruptcies before the Honorable Barry S. Schermer and the Honorable Kathy Surratt-States. In addition, Briggs represented debtors in cases pending before the Honorable Charles E. Rendlen, III, including six of the eight cases involved in the instant appeal.

By October 21, 2014, all of the debtors involved in this appeal had received their Order of Discharge from the Bankruptcy Court.

---

[1] Critique Services, LLC is also referred to herein as "Critique Services" and "Critique." Ross Briggs is also referred to herein as "Briggs". Collectively, they are referred to as "Appellants".

- 1 -

On November 26, 2014 and December 2, 2014, Bankruptcy Judge Charles E. Rendlen III issued two show cause orders directing Attorney Robinson to show cause why the Court should not order disgorgement of his unearned attorney's fees, ranging from $299 to $349 in each case, pursuant to 11 U.S.C. §329. Bankruptcy Judge Rendlen's Orders also directed the Chapter 7 Trustee in each case to address:

(a) To whom, specifically the fees were paid;

(b) Where the fees were held following payment, including whether such fees were held in a client trust account;

(c) Where the fees are held today;

(d) Whether any of those fees have been disbursed to Mr. Robinson, any attorney affiliated with or otherwise associated with (formally or informally) Critique Services, LLC or any permutation of Critique Services, LLC, to any employee, officer, or owner of Critique Services, LLC or to any other person.

The Chapter 7 Trustees filed a motion to compel, directing Briggs to produce Attorney Robinson's financial records.

On December 3, 2014, the Chapter 7 Trustees submitted a letter to Critique, Robinson, and Briggs (who had taken over the representation of six of the eight debtors following Robinson's suspension) asking that they provide documents and information that would allow the trustees to prepare accountings. On December 6, 2014, Robinson transferred to Briggs the fees he received from debtors. On December 8, 2014, Briggs wrote a letter to the Chapter 7 Trustees stating that "all of my legal services rendered on behalf of the debtors in question were afforded free of charge and no fee was paid to or shared with me in these cases. Accordingly, there are not checks, ledgers or account statements that related to such non-existent fees." Critique did not respond to the Chapter 7 Trustees' request. On December 12, 2014, the Chapter 7 Trustees filed motions to

compel turnover pursuant to 11 U.S.C. §542(e) to require Briggs, Robinson, and Critique turnover the requested information and documentation.

On January 23, 2015, the Bankruptcy Court entered an Order Compelling Turnover, directing Robinson, Briggs, and Critique to participate in the process of turning over the requested discovery. The Bankruptcy Court held that none of the three made a good faith effort to turnover documents as ordered. In addition, the Bankruptcy Court held that Briggs was discovered to have made misleading statements at the January 13, 2015 hearing on the Motion to Compel Turnover in an effort to avoid being ordered to participate in the turnover.

On February 3, 2015, Critique filed a motion to disqualify Judge Rendlen, which the Bankruptcy Court denied.

On July 6, 2015, Judge Rendlen issued an order stating that "[i]t was established that the Respondents had failed to comply with the Order Compelling Turnover," and giving notice that it was "considering the imposition of monetary sanctions and/or other nonmonetary sanctions or taking of any other nonmonetary sanctions or the taking of any other appropriate action for non-compliance." The Bankruptcy Court gave the parties seven days to comply with the Order Compelling Turnover and to file briefs stating why sanctions should not be imposed. Briggs and Critique both filed responses.

On July 22, 2015, the Court entered its order advising that it was considered suspending Briggs for six months as a sanction and giving him the opportunity to show cause why sanctions should not be imposed. The notice warned Briggs that the Court was considering sanctions because, among other things, he misled the Court about his relationship with Critique and its employees. Robinson, Briggs, and Critique were provided with an opportunity to respond to the July 2015 Orders, and each responded. Briggs responded by filing a pleading, which questioned the Bankruptcy Court's jurisdiction to enter sanctions and requesting the matter be transferred to

the District Court. Briggs also filed writs of prohibition with the District Court and the Eighth Circuit Court of Appeals, attempting to stop the Bankruptcy Court from issuing sanctions, both of which were denied. *See* District Court No. 4:15cv1204-CEJ and Eighth Circuit Court Case No. 15-2780. Briggs also filed motions for protective orders, asking another judge of the Bankruptcy Court to hold that any sanctions issued by Judge Rendlen be declared void and unenforceable. Those motions were denied.

On April 20, 2016, the Bankruptcy Court issued its Judgment and Memorandum Opinion. The Court found Briggs in contempt of the Order Compelling Turnover and found that Briggs had made deliberately misleading representations to the Bankruptcy Court regarding the nature of his relationship with Critique Services Business and Beverly Diltz. The April 20 Order suspended Briggs from using the Court's electronic filing system and from the privilege of practicing before the Bankruptcy Court for six months (until October 15, 2016). Briggs was also prohibited from soliciting new clients and from filing new cases in the Bankruptcy Court, but he was allowed to continue to represent clients he had on record as of April 20, 2016. Additionally, Briggs was ordered to take CLE classes in professional ethics and prohibited from doing any future bankruptcy-related business with Beverly Holmes Diltz (who is associated with Critique) and other persons affiliated with Critique. The April 20 Order permanently prohibited Critique from providing any goods or services to anyone in the Eastern District of Missouri regarding bankruptcy matters that would be potentially filed in this District.

Critique previously appealed an order of sanctions entered by the Bankruptcy Court. On July 7, 2016, the Eighth Circuit Court of Appeals issued its decision in *In re LaToya L. Steward*, No. 15-1857, 2016 WL 3629028 (8th Cir. Jul. 7, 2016).

## STANDARD OF REVIEW

This Court reviews the Bankruptcy Court's findings of fact for clear error and its conclusions of law de novo. *In re Reynolds*, 425 F.3d 526, 531 (8th Cir. 2005). Reversal is appropriate if the Bankruptcy Court misunderstood or misapplied the law. *In re Usery*, 123 F.3d 1089, 1093 (8th Cir. 1997) (citing *Nangle v. Lauer (In re Lauer)*, 98 F.3d 378, 383-85 (8th Cir.1996); *Hold-Trade Int'l, Inc. v. Adams Bank & Trust (In re Quality Processing, Inc.)*, 9 F.3d 1360, 1364-66 (8th Cir.1993).

## DISCUSSION

### A. Recusal

Critique argues that Judge Rendlen should have complied with the requirements of 28 U.S.C. §455(a), which provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." (ECF No. 34 at 18). Critique argues that Judge Rendlen's recusal was compelled pursuant to 28 U.S.C. §455(a) because, when Judge Rendlen was the United States Trustee, his office pursued claims against Critique. (ECF No. 34 at 19-20).

Based upon the precedent in *In Re Steward*, the Court holds that Judge Rendlen was not required to recuse himself in this case. The Eighth Circuit reasoned:

> Even if the motions to recuse were timely, Appellants have not demonstrated that Judge Rendlen's impartiality might reasonably be questioned. "A party introducing a motion to recuse carries a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise." [*Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 664 (8th Cir. 2003)](quoting *Pope v. Fed. Express Corp.*, 974 F.2d 982, 985 (8th Cir. 1992)). Moreover, a party is not entitled to recusal merely because a judge is "exceedingly ill disposed" toward them, where the judge's "knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings ...." *Liteky v. United States*, 510 U.S. 540, 551, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Appellants have supplied no evidence from which we could conclude that Judge Rendlen was not impartial. The only information in the record supporting such a conclusion comes from the allegations in Appellants' motions. And Judge

> Rendlen's orders contravene those allegations: In the orders denying the motions to recuse, Judge Rendlen explained that he was not personally involved with the United States Trustee's investigations into Critique Services and was exposed to no information relevant to Steward's motion to disgorge attorney's fees. On this record, we cannot find that Appellants "[bore] the substantial burden" of proving that Judge Rendlen was not impartial. Neither the bankruptcy court nor the district court abused its discretion in denying Appellants' multiple motions for recusal.

*In re Steward*, 828 F.3d 672, 682 (8th Cir. 2016). Similarly, Critique has not put forth any evidence to support a finding that Judge Rendlen was not impartial. Critique Sevices has not provided any evidence that Judge Rendlen was personally involved in the investigation or prosecution of the lawsuits brought by his office against Critique while he was the United States Trustee. The mere fact that Judge Rendlen previously served as the United States Trustee ten years ago and that the United States Trustee office investigated Critique is insufficient to demonstrate bias under this Eighth Circuit precedent. Accordingly the Court rejects Critique's argument that Judge Rendlen should have recused.

### B. Authority and Jurisdiction to Enter the Sanctions Order

#### 1. Subject Matter Jurisdiction

Appellants contend that the bankruptcy court lacked constitutional authority to enter the judgment against Briggs. (ECF No. 36 at 10; ECF No. 34 at 20). Bankruptcy Judges are Article I judges, not Article III judges. *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938 (2015) ("Congress has also authorized the appointment of bankruptcy and magistrate judges, who do not enjoy the protections of Article III, to assist Article III courts in their work."). Appellants argue that the Bankruptcy Court, an Article I court, only has authority to issue final judgment on claims that involve "public rights." (ECF No. 36 at 10 (citing *Stern v. Marshall*, 564 U.S. 462 (2011); ECF No. 34 at 20). In contrast, District Courts, which are Article III courts, may adjudicate "state created private rights." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 56 (1989). Appellants argue that the issue before the Bankruptcy Court involved a "private right"

not a "public rights." (ECF No. 34 at 20). Appellants contend the right at issue was a private right because the resolution of the issue of whether Attorney Robinson complied with the Missouri Rules of Professional Responsibility had no bearing on the restructuring of debtor-creditor relations and instead involved claims arising exclusively from state law. (ECF No. 36 at 11; ECF No. 34 at 21).

Bankruptcy courts have authority to issue sanctions under 11 U.S.C. §105(a), 28 U.S.C. §1927. Bankruptcy courts have implicit authority to sanction under Fed. R. Bankr. P. 9011 or under their "inherent authority." *See In re Clark*, 223 F.3d 859, 864 (8th Cir. 2000) ("The bankruptcy court awarded sanctions against Walton by exercising its authority under section 105(a) of the Bankruptcy Code, under 28 U.S.C. § 1927, implicitly pursuant to Rule 9011, and by its inherent authority."). "Section 105 gives to bankruptcy courts the broad power to implement the provisions of the bankruptcy code and to prevent an abuse of the bankruptcy process, which includes the power to sanction counsel." *In re Clark*, 223 F.3d at 864. "This provision has been interpreted as supporting the inherent authority of the bankruptcy courts to impose civil sanctions for abuses of the bankruptcy process." *In re Clark*, 223 F.3d at 864 (citing *Jones v. Bank of Santa Fe (In re Courtesy Inns Ltd., Inc.)*, 40 F.3d 1084, 1089 (10th Cir. 1994). The Eighth Circuit has also clarified, "[b]ankruptcy courts have the authority to sanction persons appearing before them, and this authority includes the right to 'control admission to [their] bar.'" *In re Steward*, 828 F.3d 672, 686–87 (8th Cir. 2016) (quoting *In re Burnett*, 450 B.R. 116, 132 (Bankr. E.D. Ark. 2011); *see also Isaacson v. Manty*, 721 F.3d 533, 538 (8th Cir. 2013) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ("Federal courts possess certain inherent powers, including the 'power to punish for contempts,' which 'reaches both conduct before the court and that beyond the court's confines.'")).

The Court holds that the Bankruptcy Court had subject matter jurisdiction over the issues presented here. As indicated, District Courts have original and subject matter jurisdiction over all cases arising under Title 11 (the Bankruptcy Code). *See* 28 U.S.C. §1334(a). "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. §157(a). Bankruptcy judges may hear and determine all cases "under title 11 and all core proceedings arising under title 11, or arising in a case under title 11[.]" 28 U.S.C. §157(b)(1). Under its local rules, the Eastern District of Missouri allows "[a]ll cases under Title 11 of the United States Code, and all proceedings arising under Title 11 or arising in or related to a case under Title 11, are referred to the bankruptcy judges for this district, who shall exercise the full extent of the authority conferred upon them." E.D.Mo. L.R. 9.01(B)(1).

The Court holds that the Bankruptcy Court had authority to issue sanctions because these matters were "arising in" a Title 11 case. *See* 28 U.S.C. §157(b); *In re Williams*, 256 B.R. 885, 891 (B.A.P. 8th Cir. 2001) ("The phrase 'arising under' applies to proceedings that involve causes of action expressly created or determined by title 11, such as causes of action to recover fraudulent conveyances and preferential transfers, section 544 avoidance actions, dischargeability proceedings, and similar rights that would not exist had there been no bankruptcy....The phrase 'arising in' generally refers to administrative matters that, although not expressly created by title 11, would have no existence but for the fact that a bankruptcy case was filed."); *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006) ("Bankruptcy jurisdiction extends to four types of title 11 matters: (1) cases 'under' title 11; (2) proceedings 'arising under' title 11; (3) proceedings 'arising in' a case under title 11; and (4) proceedings 'related to' a case under title 11."). Similarly, the January 2015 Order compelling turnover arises under and arises in Title 11. *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006) (citations omitted) ("The category of proceedings 'arising in'

bankruptcy cases 'includes such things as administrative matters, orders to turn over property of the estate and determinations of the validity, extent, or priority of liens.'"). The Court holds that, because the show cause orders and the order compelling turnover were properly assigned to the Bankruptcy Court by section 157(b) and because they were matters arising under and arising in Title 11, the Bankruptcy Court had subject matter jurisdiction.

The Court also holds that cases cited by Appellants are inapposite to the present case. Appellants rely on *Stern v. Mitchell*, 564 U.S. 462 (2011) to argue that the sanctions were issued as part of a "state law created private right" and, therefore, outside the Constitutional authority of the Bankruptcy Court. However, in *Stern v. Marshall,* the Supreme Court itself cautioned that its holding is a narrow one, affecting only this one small part of the bankruptcy judges' authority. *In re AFY, Inc.*, 461 B.R. 541, 547–48 (B.A.P. 8th Cir. 2012); *Stern*, 564 U.S. 462, 502 (2011) ("we agree with the United States that the question presented here is a 'narrow' one"). The Eighth Circuit interpreted Stern as affecting only a limited part of the bankruptcy court's authority and that "the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional." *In re AFY, Inc.*, 461 B.R. at 547–48.

The Court holds that the matters before the Bankruptcy Court that gave rise to the April 20 Order of sanctions related to disgorgement and turnover of fees and property were matters that arose under Title 11 and were not private rights or private causes of action. The Bankruptcy Court clearly had Constitutional authority to rule on these matters.

### 2. Criminal Contempt Power

Briggs argues that the sanctions issued against him were criminal and that the Bankruptcy Court, as an Article I court, lacks the constitutional authority to enter a final order of criminal contempt. (ECF No. 36 at 13). Briggs notes that his suspension from filing new cases is for a

definite term, with no provision for a reduction based on any action of Briggs; that is, "Briggs has no way to purge himself of contempt." (ECF No. 36 at 13).

In *In re Steward*, the Appellants (Critique, James Robinson d/b/a Critique, and Critique's and Robinson's former attorney Elbert Walton) appealed the imposition of a sanction, arguing that the Bankruptcy Court's order was a final order for criminal sanctions. The Bankruptcy Court had entered judgment in favor of Steward; found Robinson in contempt; made final $30,000 in accrued monetary sanctions; ordered that Walton be jointly and severally liable for the $30,000 in sanctions; imposed additional sanctions on Robinson and Walton in the amount of $19,720 for attorney's fees incurred by Steward's counsel in litigating discovery; sanctioned Robinson and Walton for making false statements to the court by suspending them from practice before the United States Bankruptcy Court for the Eastern District of Missouri; and ordered that Robinson and Walton's actions be referred to the U.S. District Court for the Eastern District of Missouri, the Office of the U.S. Trustee, and the Office of the Chief Disciplinary Counsel of the Missouri Supreme Court for any appropriate investigation and disciplinary action. The Eighth Circuit noted, "Civil contempt is distinguished from criminal contempt by the presence of a purgation provision, which allows the contemnor to purge himself of the contempt by complying with the court's orders. *In re Steward*, No. 15-1857 (citing *In re Mayex II Corp.*, 178 B.R. 464, 470 (Bankr. W.D. 1995)).[2] The Eighth Circuit reaffirmed that bankruptcy courts have the authority to exercise civil contempt power in order to coerce compliance with court orders or to compensate for damages associated with non-compliance. *Id.* The Eighth Circuit held that the sanctions were civil in nature and Robinson and Walton had been given multiple opportunities to purge

---

[2] Although Briggs argues that the April 20 Order contains no "purgation" provision pursuant to which Briggs can reduce his six month suspension from filing new cases, Briggs was given an opportunity to avoid sanction by prior to the April 20 Judgment by complying with the discovery order. Under *In re Steward*, the Court holds this was a sufficient purgation provision.

themselves of the sanction by providing discovery. The Eighth Circuit held that the "mere fact that Appellants' failure to comply with the court's orders caused the contempt sanctions to ultimately come due does not render those sanctions criminal in nature." Thus, the Eighth Circuit agreed that the Bankruptcy Court's imposition of sanctions for civil contempt was proper. Similarly, the Eighth Circuit reaffirmed that bankruptcy courts have the authority to sanctions persons appearing before them, and this authority includes the right to control admission to their bar. *In re Steward*, No. 15-1857 (citing In re Burnett, 450 B.R. 116, 132 (Bankr. E.D. Ark. 2011); E.D.Mo. L.R. 12.02). The Eighth Circuit held that the Bankruptcy Court's suspension of Robinson and Walton from practicing in the Bankruptcy Court for the Eastern District of Missouri was a proper exercise of its authority and did not constitute an abuse of discretion.

The Court notes that the April 20 Order specifically states that it is not a criminal contempt proceeding: "There is no criminal contempt proceeding. The sanctions are imposed for the purpose of enforcing the Order Compelling Turnover and to hold accountable those who have refused to obey that order. ... The fact that the sanctions may 'punish' in the sense that they hold a party accountable for bad behavior does not make them criminal in nature." In addition the Bankruptcy Court explained how the parties might purge themselves of sanctions. For example, the April 20 Order invited Briggs to file for reinstatement of the privilege to practice presuming he completed a required CLE provision. They were afforded multiple opportunities to redress those violations. Only after failing to comply with the Bankruptcy Court's orders mandating compliance, they were sanctioned with a monetary fine and barred from obtaining new clients for six months. The Court holds that these sanctions likely will be determined to be civil in nature and a proper exercise of the Bankruptcy Court's constitutional authority. The Court also notes that the Bankruptcy Court gave the Appellants the opportunity to purge themselves of the sanctions order. For example, the Bankruptcy Court temporarily lifted some of the sanctions

against Briggs after he agreed to meet with representatives from the Missouri Attorney General's Office.

The Bankruptcy Court issued sanctions based, in part, upon the misleading statements by Briggs. While this may constitute a form of attorney discipline, the Court holds that it does not make it a criminal sanction. *Rosenthal v. Justices of the Supreme Court of California*, 910 F.2d 561, 564 (9th Cir. 1990)("A lawyer disciplinary proceeding is not a criminal proceeding."). Bankruptcy courts are permitted to impose sanctions under Fed. R. Bankr. P. 9011 and prohibit attorneys from practicing before them. *See In re Young*, 507 B.R. 286, 296 (B.A.P. 8th Cir. 2014). Accordingly, the Court denies Appellants' appeal based upon their claim that the Bankruptcy Court could not issue sanctions against them.

**C. Due Process**

Briggs argues that he did not receive due process before the sanctions against him were imposed. Briggs contends that the Bankruptcy Court had no authority to conclude a disciplinary proceeding against an attorney. (ECF No. 36 at 14-15). Briggs claims that the only recourse that the Bankruptcy Court had was to refer any discipline to the District Court for investigation under the District Court Rules. (ECF No. 36 at 15). Likewise, Briggs asserts that the Bankruptcy Court did not have the power to suspend him because it did not control the admission of Briggs to the bankruptcy bar. Briggs claims he should have received an evidentiary hearing pursuant to Rule V of the District Court Rules of Disciplinary Enforcement. (ECF No. 36 at 15).

Here, Briggs and Critique received multiple notices and opportunities to be heard. The Bankruptcy Court provided multiple notices to Briggs and Critique that it was considering sanctions against them. The Bankruptcy Court gave Briggs and Critique an opportunity to file written briefs, which they did. Briggs also sought writs of prohibition against Judge Rendlen,

which were denied. The Court holds that this was sufficient due process and denies the appeal on this basis.

### D. Sufficient Factual Basis

Appellants claim that the factual record does not support a finding of contempt. Appellants assert that there was no finding that Briggs had the requested documents in his possession. (ECF No. 36 at 15-16). Appellants argue that the Bankruptcy Court could not hold Briggs in contempt for failing to conduct discovery because the Bankruptcy Court did not state that it was considering imposing sanctions on this basis. (ECF No. 36 at 16). Appellants assert that the Bankruptcy Court's July 6, 2015 Order failed to specify how they could comply with the discovery order; it simply stated "[a]t the status conference, it was established that the Respondents failed to comply with the [Turnover Order]." (ECF No. 36 at 16 (citing ECF No. 91 at 2)). Appellants claim that the Order fails to specify how they could comply and does not mention that Briggs failed to engage in third-party discovery. (ECF No. 36 at 16). Appellants claim that they did not have notice of the possible basis for sanctions and had no affirmative duty to engage in third-party discovery; Appellants state that they were not directed by their clients to investigate Robinson's financial records. (ECF No. 36 at 16-17). Appellants also assert that the Court's interpretation of Briggs' oral statements made at the hearing cannot support a finding of contempt. (ECF No. 36 at 17). Appellants argue that the Court made no finding that Briggs made a false statement to the Bankruptcy Court regarding his relationship with Critique. In fact, Appellants state that Briggs' statements to the Court concerning his relationship with Critique were truthful and accurate. (ECF No. 36 at 18). Appellants maintain that there is no evidence that Briggs' responses to the Court obstructed the discovery process or disrupted the orderliness of the January 13 hearing or status conference. (ECF No. 36 at 19).

The Court holds that there was no abuse of discretion in the Bankruptcy Court's factual findings that formed the basis for the sanctions. The Court notes that Briggs was not disciplined for a discovery dispute. Rather, he was disciplined for failing to comply with the Bankruptcy Court's orders compelling the turnover of information and documentation and for making misleading statements to the Court. Briggs was sanctioned for activities that occurred directly before the Bankruptcy Court. The Bankruptcy Court had sufficient factual basis to issue its order and was within its power to sanction Briggs for misleading statements. *In re Burnett*, 450 B.R. 116, 131 (Bankr. E.D. Ark. 2011) ("The bankruptcy courts have broad authority, under Federal Rule of Bankruptcy Procedure 9011, 11 U.S.C. § 105(a), and their inherent authority, to sanction the persons appearing before them." (citing Fed. R. Bankr.P. 9011; 11 U.S.C. § 105(a); *In re Clark*, 223 F.3d 859, 864 (8th Cir. 2000); *In re Brown*, 152 B.R. 563, 567 (Bankr. E.D. Ark.1993)). The Court denies the appeal on this basis.

### E. Abuse of Discretion By Bankruptcy Court's Failure to Consolidate Cases

Critique filed a Fed. R. Civ. P. 42(a) motion to consolidate the eight Chapter 7 Bankruptcy cases that gave rise to this appeal, but the Bankruptcy Court denied Critique's request. The Bankruptcy Court held (among other things) that it would not consolidate the cases because Critique's involvement with each of the eight debtors was different.

Critique argues that the Bankruptcy Court abused its discretion in denying Critique's Motion to Consolidate the eight bankruptcy cases below for purposes of an efficient appeal. (ECF No. 34 at 29). Critique notes that this Court later consolidated the eight appeals. (ECF No. 34 at 30).

Federal Rule 42 provides that "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." An

order denying a "motion to consolidate should not be disturbed unless it is determined that the court clearly abused its discretion." *U.S. E.P.A. v. City of Green Forest, Ark.*, 921 F.2d 1394, 1402 (8th Cir. 1990) (citing *Shump v. Balka,* 574 F.2d 1341, 1344 (10th Cir. 1978); *Gentry v. Smith,* 487 F.2d 571, 581 (5th Cir. 1973); 9 Wright & Miller, Federal Practice and Procedure § 2383 (1971)). Here, Critique has failed to demonstrate that the Bankruptcy Court abused its discretion. Rather, the Bankruptcy Court specifically outlined that its basis for denying the Motion to Consolidate, which this Court finds not to be an abuse of discretion.

### F. Mootness of Disgorgement

Critique also argues that the underlying cause of action in the Bankruptcy Court became moot once Attorney Robinson returned his fee to the debtor. (ECF No. 34 at 22-28). Critique notes that there is no pleading that names Critique as liable for the fees to be disgorged. Critique argues that, "[b]y the explicit terms of 11 U.S.C. §329(b) the only remedy available under a proceeding to disgorge a fee is for the court to 'return any such [fees] to the extent excessive.'" (ECF No. 34 at 24-25 (citing 11 U.S.C. §329(b)). Critique asserts that the statute does not provide for any other remedy including monitoring of how an attorney administers his office or what was done with the fee before being returned. Critique claims that the Bankruptcy Court improperly relied upon 11 U.S.C. §105(a) to support the disgorgement of fees in spite of their repayment. (ECF No. 34 at 25). Critique claims that §329(b) only provides for the disgorgement of a part or all of any attorneys' fees paid by a debtor and the Bankruptcy Court cannot use §105(a) to forge a remedy not provided for under the Bankruptcy Code. (ECF No. 34 at 27).

As an initial matter, the Court holds that Critique abandoned this argument because it failed to raise this issue in its statement of the issues to presented that it filed with the bankruptcy clerk. *See* Fed. R. Bankr. P. 8009(a) ("The appellant must file with the bankruptcy clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the

issues to be presented."); *In re Bullard*, 449 B.R. 379, 382 (B.A.P. 8th Cir. 2011) ("The Creditor has abandoned [this] argument on appeal by virtue of his failure to include that issue in his statement of issues on appeal or in his brief."); *In re Freeman*, 124 B.R. 840, 841 (N.D. Ala. 1991) ("The appellant has raised on appeal several issues which are not included in the Designation of the Record on Appeal. This court declines to consider these issues in its decision."). Likewise, Critique's brief does not cite to anything in the record indicating that it raised this issue previously. Therefore, the Court denies Critique's appeal on this basis.

Moreover, even if this Court were to consider Critique's appeal of this issue, it would fail on the merits. The Court holds that the mere turnover of some of Robinson's fees to Briggs did not moot this case before the Bankruptcy Court. Even after the turnover of fees, the Chapter 7 trustees remained obligated to monitor and fully account for the property of the estates and the Bankruptcy Court continued to be required to monitor the activities of the Chapter 7 trustees and issue any order "that is necessary or appropriate to carry out the provisions" of Title 11. *See* 11 U.S.C. §105(a). Thus, even if Robinson turned over the fees, the Chapter 7 Trustees and the Bankruptcy Court were required to monitor the estates, oversee their activities, and issue any orders resulting therefrom. Therefore, the Court holds that the issues presented were not mooted by Robinson's turnover of fees and Critique's issue on appeal is denied.

Accordingly,

**IT IS HEREBY ORDERED** that the appeals of Ross H. Briggs and Critique Services, LLC of the Bankruptcy Court's decision are **DENIED**. The April 20, 2016 Orders of the Bankruptcy Court are affirmed.

An appropriate Judgment is filed herewith.

Dated this 3rd day of January, 2017.

/s/ Ronnie L. White
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE